**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MICHAEL GAGHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>GUEST SERVICES, INC.,<br><br>    Defendant. |

Civil Action 03-01096
(HHK)

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Michael Gaghan ("Gaghan"), brings this action against defendant, Guest Services, Inc. ("Guest Services"), under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, alleging that Guest Services denied Gaghan's "attempts to exercise his legal rights" under the FMLA, Compl. ¶ 22, and retaliated against him for exercising those rights. Presently before the court is the motion of Guest Services for summary judgment [#11]. Upon consideration of the motion, the opposition thereto, and the summary judgment record, the court concludes that the motion should be granted in part and denied in part.

**I.  FACTUAL BACKGROUND**

Guest Services is a hospitality company that supplies a variety of food services for various types of agencies, including law firms, nursing homes, business associations, recreational venues, and governmental agencies. Beginning in May 1985, Guest Services employed Gaghan

as an executive chef.  In 1989, Gaghan became the executive chef director at the Washington, D.C. office of the law firm of Morgan Lewis & Bockius LLP ("Morgan Lewis"), one of Guest Services' clients.  Throughout the course of Gaghan's employment, Guest Services and Morgan Lewis were parties to a written contract under which Morgan Lewis reserved the right to replace personnel, including the executive chef director, at any time.

As an executive chef director, Gaghan oversaw all culinary responsibilities and was directly involved with all administrative duties, including staff supervision, client communications, purchasing, accounts payable and receivable, event planning, and merchandising.  Gaghan was considered a "good employee" by his supervisor, Kathy Smith, Smith Dep. 23:7, Feb. 11, 2004, and received bonuses most years.  However, Gaghan had an "awful" working relationship with Morgan Lewis's Director of Administration, Lizabeth Boulware, during Boulware's time at Morgan Lewis.[1]  Pl.'s Dep. 29:9, Feb. 6, 2004.

On March 1, 2000, Gaghan sustained nerve damage due to a serious non-work-related automobile accident and, throughout the rest of 2000, he missed work intermittently because of his injuries.  In January 2001, Gaghan's doctors advised him that he needed surgery.  As a result, Gaghan requested medical leave to undertake this treatment.  Gaghan's leave of absence began on January 25, 2001, and his spinal fusion surgery took place four days later.

By letter, dated March 12, 2001, Guest Services confirmed to Gaghan that his request for medical leave was approved.  The letter indicated that Gaghan's FMLA leave was to run from

---

[1] Boulware became Director of Administration approximately four years prior to Gaghan's dismissal and continued in that position until after Gaghan was terminated.

January 26, 2001 until April 19, 2001 and that his Emergency Medical Leave[2] was to run from March 6, 2001 until April 20, 2001. This letter also explained that Guest Services' policy was that FMLA leave and paid leave would run concurrently.[3] As a result of his accrued paid leave and Emergency Medical Leave, Gaghan continued to earn his salary throughout the length of his medical leave.

During Gaghan's leave, Michael Hamby, an assistant chef at Morgan Lewis, performed all of Gaghan's duties and responsibilities and, at the same time, continued to perform his own responsibilities. While Gaghan was on leave, Hamby improved the professional relationship between Guest Services and Boulware. Further, during Gaghan's absence, the Director of Facilities at Morgan Lewis, Raymond Croxton, received numerous compliments from attorneys and staff concerning the quality of the food and the service under Hamby's leadership.

Soon after his surgery, Gaghan requested that his home computer be configured so that he could work from home while on medical leave. Guest Services complied with this request. Gaghan also contacted Hamby, Smith, and Holly Burke, Guest Services' Human Resources Director, to request that work be sent for him to complete at home. Because, according to Guest

---

[2] Emergency Medical Leave is a benefit provided by Guest Services that provides income protection to eligible employees over prolonged absences when accrued sick leave or paid time off runs out. As explained in the Policies and Procedures Notebook, of which Gaghan had a copy, the pay protection benefit ran concurrently with FMLA leave.

[3] This letter was not the first time that Gaghan was informed about Guest Services' policies regarding FMLA leave. During his employment, Gaghan was provided a copy of Guest Services' "Policies and Procedures Notebook" as well as its "Employee Notebook," both of which discussed Guest Services' human resources policies. Gaghan kept a copy of the "Policies and Procedures Notebook" above his desk and referred to it when addressing questions from other directors.

Services, Hamby was able to complete his work "in a timely manner," Smith Dep. 31:9-11, Feb. 11, 2004, and because "there was not that much to do," Hamby Dep. 49:9-14, Feb. 23. 2004, Gaghan was never given any work to complete at home.

Managers at Guest Services are eligible for a bonus of up to fifteen percent of their salary. Bonus eligibility is determined by examining both financial performance and the employee's annual evaluation. In March 2001, while Gaghan was on medical leave, Guest Services determined that Gaghan was not eligible for a bonus for the prior year, allegedly because of poor financial performance.

Gaghan's twelve weeks of FMLA leave was to expire on April 19, 2001. By that date, Gaghan had yet to fully recover and was unable to perform some of the essential function of his position. It was not until May 17, 2001, that Gaghan's doctors informed him that he could return to work on May 29, 2001—almost six weeks after his FMLA leave had expired. The medical release limited Gaghan's time at work to eight hours per day and restricted him from lifting, carrying, pushing, and pulling anything greater than fifty pounds. The release also forbade Gaghan from repetitive overhead work.

The same day that Gaghan obtained his release, Morgan Lewis held a management committee meeting. At this meeting, Boulware suggested that Hamby replace Gaghan and continue as the executive chef director.[4] No one from Guest Services attended this meeting, no one from Guest Services advocated that Gaghan be replaced, and no one from Guest Services informed Morgan Lewis about Gaghan's medical status. The day after the meeting, a

---

[4] Earlier in May 2001, Croxton had discussed with Boulware his desires to replace Gaghan with Hamby. Those desires were based on the positive feedback that he received about Hamby while Gaghan was on leave.

representative from Morgan Lewis told Guest Services of their decision to replace Gaghan. Written confirmation of Gaghan's termination was given on May 21, 2001. Prior to this contact, Guest Services was under the impression that Gaghan would return to Morgan Lewis to continue his position as executive chef director. On Monday, May 21, 2001, representatives from Guest Services met with Gaghan and informed him of Morgan Lewis's decision.

This lawsuit followed. Gaghan alleges that Guest Services "unlawfully and discriminatorily denied [Gaghan's] attempts to exercise his legal rights [under the FMLA]," Compl. ¶ 22, and "unlawfully and discriminatorily terminated his employment and otherwise discriminated against him . . . because of his use of family leave for serious medical conditions." *Id.* ¶ 20. After discovery, Guest Services filed the instant motion.

## II.  ANALYSIS

### A.  Legal Standard

Under Fed. R. Civ. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there

is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may not be granted.  *Anderson*, 477 U.S. at 249–50.

**B.  Plaintiff's Claims**

Gaghan alleges that he was "terminated in violation of his rights under the FMLA," Compl. ¶ 17; that he was improperly denied his bonus while on medical leave, Pl.'s Opp'n at 6–8; and that his efforts to "work from home electronically while recovering from his surgery" were thwarted by Guest Services, in violation of the FMLA, *id.* at 8–9.

Courts recognize two distinct types of cognizable claims under the FMLA: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001); *see also* 29 U.S.C. § 2615(a)(1), (2); *Price v. Wash. Hosp. Ctr.*, 321 F. Supp. 2d 38, 46 (D.D.C. 2004); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999).  The court will analyze each of Gaghan's allegations under both theories.

    **1.  Gaghan's Interference Claims**

To state a prima facie claim of interference with any substantive right provided by the FMLA, an employee must demonstrate, by a preponderance of the evidence, that she was entitled to the right allegedly denied.  *Strickland*, 239 F.3d at 1206-07; *see also Bachelder v. America*

*West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). The relevant substantive rights created by the FMLA for purposes of this case are two-fold. First, the FMLA guarantees that eligible employees "shall be entitled" to up to twelve weeks of unpaid leave per year for specified reasons, including, as relevant here, the inability to work due to the employee's own serious health condition. 29 U.S.C. § 2612(a)(1)(D).[5] Second, the FMLA ensures that an employee taking leave will be restored to her former position upon returning to work. *Id.* § 2614(a)(1). However, "[t]he right to reinstatement is . . . not absolute." *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). For example, if an employee is "unable to perform an essential function of the position" at the time FMLA leave ends, the employee has no right to reinstatement. 29 C.F.R. § 825.214(b). Similarly, an employee who is laid off during the course of her leave has no right to reinstatement. *Id.* § 825.216(a)(1).

Gaghan claims that Guest Services terminated him "in order to interfere with [his] rights to medical leave under the FMLA." Compl. ¶ 14. Guest Services denies this charge, noting that it approved Gaghan's full twelve weeks of medical leave. It also argues that because Gaghan did not return to work after those twelve weeks, he forfeited any right he had to reinstatement. Gaghan does not dispute that his right to twelve weeks of FMLA leave was respected. Instead, he suggests that had he been allowed to work from home as he had requested, his twelve weeks of medical leave "would have extended beyond May 29, 2001, the day he would have returned to work." Pl.'s Opp'n at 8. Accordingly, Gaghan asserts that Guest Services violated his rights under the FMLA by refusing to reinstate him.

---

[5] There is no dispute that Gaghan was an eligible employee for purposes of the FMLA.

It is undisputed that Guest Services approved Gaghan's FMLA leave, in writing, from January 26, 2001 until April 19, 2001. It is also undisputed that Gaghan was not released to return to work until May 29, 2001, almost six weeks after his FMLA leave expired. As the FMLA only guarantees an employee the right to twelve weeks of leave, an employer has no obligation to reinstate an employee who is unable to perform an essential function of his position at the time FMLA leave expires and thereby takes additional leave. 29 C.F.R. § 825.214(b); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999); *Brown v. Trans World Airlines*, 127 F.3d 337, 342 (4th Cir. 1997); *Passaeur v. Quest Diagnostics, Inc.*, 2004 WL 865829, at *3 (D. Md. 2004). Accordingly, by not returning to work by April 19, 2001, Gaghan forfeited any right to reinstatement that he had under the FMLA.

Gaghan's attempt to circumvent the undisputed fact that his medical leave extended beyond twelve weeks is unavailing. Gaghan argues that, had Guest Services allowed him to work from home intermittently as he had requested, his FMLA leave would have been extended. This argument fails for two reasons. First, Guest Services had no legal duty under the FMLA to provide intermittent work for Gaghan while he was on medical leave and was unable to perform the essential functions of the job. *See Hatchett v. Philander Smith College*, 251 F.3d 670, 676–77 (8th Cir. 2001) ("We hold that the legislative history of the FMLA and the statute's restoration provisions demonstrate that an employee who could not otherwise perform the essential functions of her job, apart from the inability to work a full-time schedule, is not entitled to intermittent or reduced schedule leave"). Second, Gaghan fails to present anything more than pure speculation that there was enough work for him to do from home to extend his FMLA leave by more than five weeks. Speculation alone cannot suffice to avoid summary judgment. *Brown*

*v. Brody*, 199 F.3d 446, 458–59 (D.C. Cir. 1999) ("'As courts are not free to second-guess an employer's business judgment,' a plaintiff's mere speculations are 'insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment.'") (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)); *Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 13 (D.D.C. 2000).

### 2. Gaghan's Retaliation Claims

In addition to creating the substantive rights discussed above, the FMLA also provides protection in the event that an employee is discriminated against for exercising those rights. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220. Specifically, the regulations state that "[a]n employee is prohibited from discriminating against employees . . . who have used FMLA leave." *Id.* § 825.220(c). Beyond claiming that Guest Services interfered with the rights guaranteed by the FMLA, Gaghan also claims that he was terminated, denied the opportunity to work from home while on leave, and denied a bonus, all in retaliation for his decision to take leave under the FMLA.

Such retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *Glecklen v. Democratic Cong. Campaign*, 199 F.3d 1365, 1367 (D.C. Cir. 2000). Under this framework, Gaghan first bears the burden of establishing a prima facie case of retaliation. To meet this requirement, he must show (1) that he exercised rights afforded by the Act; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the exercise of his rights and the adverse employment action. *Id.* at 1368; *Hodgens v. General Dynamic Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). If successful, the burden

shifts to Guest Services to produce evidence articulating a legitimate non-discriminatory reason for its actions. If this evidence creates a genuine issue of fact, the burden reverts to Gaghan to show that the employer's stated reasons were in fact a pretext for retaliating against him for having taken protected FMLA leave. *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). The court will now analyze each of Gaghan's three allegations of retaliation.

### a. Termination

First, Gaghan claims that Guest Services' decision to terminate him was in retaliation for his taking FMLA leave. To proceed with this claim, Gaghan must first establish a prima facie case of such retaliation, which Gaghan is able to do. There is no dispute that Gaghan exercised his rights under the FMLA and that his termination constituted an adverse employment action. As for the third element of Gaghan's prima facie case, temporal proximity is often sufficient to satisfy the causal connection requirement. *Gleklen*, 199 F.3d at 1368; *see also King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir. 1999) ("Generally, a plaintiff may establish such a [causal] link through evidence that the discharge took place on the heels of protected activity.") (quotation omitted). Given that Gaghan was terminated less than a week after giving notice of his intent to return from medical leave, the court concludes that Gaghan has satisfied the causation requirement and therefore has established a prima facie case of retaliation with regards to his termination.

The court further concludes that Guest Services produced evidence that articulated a legitimate non-discriminatory reason for its decision to terminate Gaghan. Specifically, Guest Services points to the uncontested evidence that Morgan Lewis, pursuant to its contractual right to replace its executive chef director at any time, elected in May 2001 to replace Gaghan for

budgetary reasons and because they were unsatisfied with Gaghan's performance. This evidence includes deposition testimony from Croxton, Hamby, and Smith, as well as sworn affidavit testimony from Croxton and Smith, all of which supported Guest Services' assertions that Morgan Lewis's decision to terminate Gaghan was not based on Gaghan's decision to take FMLA leave. The court is satisfied that Guest Services has satisfied its burden of coming forward with a legitimate, non-discriminatory reason for Gaghan's termination.

As such, the presumption of discrimination created by the prima facie case drops out and the burden shifts back to Gaghan to present evidence indicating that the offered reason is a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Gaghan has failed to satisfy this burden. As the Supreme Court has explained, a legitimate, non-discriminatory reason offered by a defendant "cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* at 515; *see also Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1290–95 (D.C. Cir. 1998) (discussing the plaintiff's burden when attempting to establish that the defendant's proffered reasons are pretextual). Gaghan fails to meet his burden.

Notably, Gaghan never disputes that the decision to lay off Gaghan came from Morgan Lewis, or that the decision was for legitimate business reasons.[6] Instead, he argues that his FMLA leave could have extended beyond the date of his termination if he had been allowed to work from home, and if that had happened, Guest Services would have had an obligation to find

---

[6] Gaghan's deposition testimony indicates that he does not dispute that Morgan Lewis' decision to replace Gaghan was for legitimate business reasons. For example, he testified that Hamby "improved relations with Liz Boulware immensely," Pl.'s Dep. 92:14–15, Feb. 6, 2004, and that the decision "was basically a financial decision on [Morgan Lewis's] part," Pl's Dep. 126:21–22, Feb. 6, 2004.

him another position at Guest Services.  Their failure to do so, he argues, demonstrates pretext. *Id.* at 11.  This argument must be rejected, for it rests upon nothing more than pure speculation. *Brown*, 199 F.3d at 458–59 (D.C. Cir. 1999).  Gaghan has provided no evidence to suggest that Guest Services' proffered reasons were untrue.  Nor has he provided any evidence to suggest that discrimination was the "real reason" behind Guest Services' decision to terminate him. Accordingly, the court concludes that Gaghan's claim that his termination was in retaliation for his use of FMLA leave must be dismissed.

### b. Intermittent Work from Home

Gaghan also alleges that Guest Services' failure to provide intermittent work for Gaghan while he was on FMLA leave constituted retaliation in violation of the FMLA.  The court cannot agree.  Gaghan has failed to establish a prima facie case of retaliation with regards to this allegation because Guest Services' failure to provide work opportunities for Gaghan while he was at home on FMLA leave does not constitute an "adverse employment action."  The Supreme Court has described the concept of an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus v. Ellerth,* 524 U.S. 742, 761 (1998).  Gaghan's employment status did not change as a result of his failure to work from home while on leave.  Moreover, he was fully compensated during his entire leave.  Pl.'s Dep. 99:1–3, Feb. 6, 2004 ("Q. Over the time you were out, there was no interruption to your paycheck, was there?  A. None.").  Consequently, the evidence submitted by Gaghan fails to establish that, by not being given work to do at home while on FMLA leave, he suffered "materially adverse consequences affecting the terms, conditions, or

privileges of [his] employment . . . such that a reasonable trier of fact could conclude that [he] suffered objectively tangible harm." *Brown*, 199 F.3d at 455, 457.[7]

### c. Bonus

Finally, Gaghan claims that Guest Services' decision not to award him a bonus for his work in 2000 was in retaliation for his decision to take FMLA leave. Gaghan presented sufficient evidence to establish a prima facie case of retaliation with regards to this allegation. First, Gaghan exercised his FMLA rights. Second, Guest Services' decision to deny him a bonus constitutes an adverse employment action. *Russell v. Principi*, 257 F.3d 815, 817 (D.C. Cir. 2001) ("We hold that the loss of a bonus can constitute an adverse employment action"). Third, and finally, the close temporal proximity between the decision to deny Gaghan a bonus, in March 2001, and Gaghan's FMLA leave, also in March 2001, satisfies the causal connection requirement. *Gleklen*, 199 F.3d at 1368.[8]

---

[7] If called upon to reach the issue, the court would also conclude that Guest Services provided evidence of its legitimate, non-discriminatory reasons for not providing work to Gaghan while he was on leave, *i.e.*, that there simply was no work to give him. Gaghan has not pointed to any evidence that creates a question of fact that this reason was pretextual. Gaghan does note that another employee taking FMLA leave was provided work while on leave in an attempt to suggest that Guest Services' explanation was pretextual. However, that fact does not support the conclusion that Guest Services was hostile to employees who exercise FMLA rights. Rather it suggests the opposite—that Guest Services is *not* hostile to employees who take medical leave and is willing to provide work to such employees, provided appropriate work is available.

[8] Guest Services suggests that there was no causal connection "between Guest Services' bonus determination in March 2001, on the one hand, and Plaintiff's loss of reinstatement rights after a 17-plus week absence, as well as Morgan Lewis' May 2001 decision to replace Plaintiff, on the other hand." Def.'s Reply at 11. This argument misses the mark. Gaghan claims that Guest Services' bonus decision constituted retaliation against Gaghan for his decision to take FMLA leave. The temporal relationship between the bonus decision and the decision to *terminate* Gaghan is irrelevant to this analysis. Gaghan, indisputably, was in the midst of his FMLA leave when the bonus determination was made in March 2001.

To rebut this prima facie case of retaliation, Guest Services provides evidence that the decision not to award Gaghan a bonus was an objective one "based strictly on [a] calculation" that scores an employee's financial performance and an annual evaluation. Smith Aff. ¶ 4. According to Smith, Gaghan's supervisor who was responsible for determining bonuses, a bonus is not paid unless the scores for both an employee's financial performance and annual evaluation each exceed a certain threshold. Id. ¶ 5. Guest Services asserts that Gaghan failed to meet his financial goals for 2000, and that this failure "disqualif[ied] him for a bonus." Id. ¶ 6. Guest Services further contends that "[t]he fact that Mr. Gaghan was on leave starting in 2001 had no impact on his bonus eligibility for the year 2000." Id. Finally, Guest Services states that other employees who took FMLA leave received bonuses, thereby "undercut[ting] any contention of hostility by Guest Services toward employees exercising FMLA rights." Def's Reply at 11 n.11.

In response, Gaghan provides evidence that his annual evaluation "was outstanding and gave no hint that any objectives were not met." Pl.'s Opp'n at 3 (citing Ex. 11, Gaghan Performance Evaluation). He also contends that, contrary to Smith's sworn statements, he actually met his financial goals for 2000. Id. (citing Pl.'s Aff. ¶ 14).

Nowhere among the exhibits submitted by either party is there any objective evidence to establish whether Gaghan did or did not meet his financial goals for 2000. All that is presented to this court is dueling affidavits, one from Smith stating that Gaghan did not meet his goals, and one from Gaghan stating that he did.[9] At this stage of the proceedings, the court is precluded

---

[9] In its reply brief, Guest Services contends that Gaghan "admitted" that he failed to meet his budget goals for 2000. Def.'s Reply at 10. This is incorrect. It is true that Gaghan admitted that labor costs were over budget. Pl.'s Aff. ¶ 14. However, he also stated that non-labor costs were down, "leading to me meeting the 2000 financial goal." Id. Further, at his deposition, he stated that he "met performance goals" in 2000, Pl.'s Dep. 41:12–13, Feb. 6, 2004, and that

from weighing the evidence. Rather, it must treat the evidence of the non-moving party as true, and resolve all doubts against the moving party. *Anderson*, 477 U.S. at 255. Doing so, the court concludes that there is a dispute as to whether Guest Services' proffered reason for denying Gaghan a bonus was true. Furthermore, the resolution of this dispute might affect the outcome of the suit and is therefore material. As a result, the court cannot conclude as a matter of law that summary judgment is appropriate on this issue.

### III.  CONCLUSION

For the aforementioned reasons, it is this 26th day of October, 2005, hereby

**ORDERED** that defendant's motion for summary judgment is granted in part and denied in part as set forth in this Memorandum Opinion.

Henry H. Kennedy, Jr.
United States District Judge

---

"because of the type of financial performance [his division] had the year prior, you get the bonus," *id.* at 146:22–147:2.